## State of Connecticut *v.* James Diggs
### (13876)

Peters, C. J., Shea, Callahan, Glass and Borden, Js.

Argued March 26—decision released June 18, 1991

*G. Douglas Nash,* public defender, with whom, on the brief, was *Arnaldo Granados,* assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Linda Howe,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, James Diggs, was charged in an information with murder in violation of General Statutes § 53a-54a (a).[1] He was convicted by a jury of the crime charged and was sentenced by the trial court to a term of imprisonment of forty-six years.

The charge arose out of an incident that occurred shortly after 1 o'clock in the morning on October 2, 1988, in front of 541 Gregory Street, Bridgeport. During an argument, the defendant, then sixteen years old, shot and killed the victim, twenty-six year old Frank Davis, with a single shot from a sawed-off .22 caliber rifle.[2] The defendant admitted killing Davis but claimed that the killing was justified because he had acted in self-defense.

I

The defendant first claims that his conviction should be reversed because the trial court, although it instructed the jury on the portion of General Statutes § 53a-19 (c) (2)[3] that states that one is not justified in using physical force in defense of his person if he is the

---

[1] General Statutes § 53a-54a (a) provides: "MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[2] The rifle, which had been a semiautomatic, had been altered so that it fired only a single shot because, in reducing its overall length, its tube magazine had been removed.

[3] "[General Statutes] Sec. 53a-19. USE OF PHYSICAL FORCE IN DEFENSE OF PERSON. (a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend

initial aggressor, failed to give the jury the requested instruction that, even if it found that the defendant had been the initial aggressor in his confrontation with the victim, his use of physical force would have been justified if he had withdrawn from the encounter and had effectively communicated his intent to do so, but the victim had, nonetheless, continued the use of deadly physical force or had threatened the continued use of deadly physical force against him. The defendant concedes that the jury could have found from the evidence that he was the initial aggressor in his encounter with the victim. He contends, however, that there was also evidence that he had withdrawn and had communicated effectively his intent to withdraw but the victim had

himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

continued the use or had threatened the continued use of deadly physical force. The defendant claims, therefore, that he was entitled to a charge encompassing the whole of § 53a-19 (c) (2), including the exception to criminal liability that allows even an initial aggressor to claim self-defense if he withdraws from the encounter and effectively communicates that intention to his victim. We disagree.

The conflict between the defendant and the victim was ignited when the victim, after parking his car on Gregory Street, approached a group of youths, including the defendant, that had gathered around the front porch of 541 Gregory Street. At that time words were exchanged between the victim and the defendant. Thereafter, the defendant jumped from the porch and retrieved the .22 caliber rifle that the defendant knew had been placed under the porch earlier in the evening by a friend. The defendant then confronted the victim with the rifle. The victim's cousin, Rayford Scott, who had come to Gregory Street with the victim, crossed the street and attempted to defuse an argument that had clearly gotten out of hand. The victim and the defendant continued to argue and to threaten, however, and the victim threw a punch at the defendant. There is conflicting evidence as to whether the punch landed on the defendant. Nevertheless, after the punch was thrown, the defendant shot the victim. The single bullet pierced the victim's right side, striking his heart and lungs and causing massive internal bleeding and death.

When considering a claim of failure to deliver a requested charge, we adopt the version of the facts most favorable to the defendant that the evidence reasonably would support. *State* v. *Havican,* 213 Conn. 593, 595, 569 A.2d 1089 (1990); *State* v. *Fuller,* 199 Conn. 273, 275, 506 A.2d 556 (1986); *State* v. *Arroyo,* 181 Conn. 426, 430–31, 435 A.2d 967 (1980); *State* v.

*Tyson,* 23 Conn. App. 28, 33, 579 A.2d 1083 (1990). The court, however, has a duty not to submit to the jury, in its charge, any issue upon which the evidence would not reasonably support a finding. *State* v. *Williams,* 202 Conn. 349, 364, 521 A.2d 150 (1987); *Batick* v. *Seymour,* 186 Conn. 632, 641, 443 A.2d 471 (1982); *Miles* v. *Sherman,* 116 Conn. 678, 682, 166 A. 250 (1933); *Drummond* v. *Hussey,* 24 Conn. App. 247, 248, 588 A.2d 223 (1991).

An instruction as to the effect of an aggressor withdrawing from an encounter and communicating the intent to withdraw is only necessary where the particular factual situation supports such an instruction. *People* v. *Peoples,* 75 Mich. App. 616, 624–25, 255 N.W.2d 707 (1977). Further, the doctrine of communicated withdrawal may not be invoked unless the aggressor's intent to withdraw is clearly made known to his victim. *Melchior* v. *Jago,* 723 F.2d 486, 493 (6th Cir. 1983), cert. denied, 466 U.S. 952, 104 S. Ct. 2156, 80 L. Ed. 2d 542 (1984); *People* v. *Kerley,* 95 Mich. App. 74, 83, 289 N.W.2d 883 (1980), appeal denied, 411 Mich. 868, 312 N.W.2d 380 (1981); *Bellcourt* v. *State,* 390 N.W.2d 269, 272 (Minn. 1986). "In other words, the initial aggressor must withdraw or abandon the conflict in such a way that the fact of withdrawal is perceived by his opponent, so that his adversary is aware that he is no longer in any danger from the original aggressor." 3 Am. Jur. 2d 712, Proof of Facts § 4.

We have conducted a thorough search of the transcript and conclude that the record contains no evidence that reasonably would support a finding that the defendant had withdrawn from the encounter with the victim or had clearly manifested his intention to do so. In his brief the defendant argues that his admonishment to Scott, the victim's cousin, to "tell your cousin to get out of my face" and "come and get your cousin"

and warning the victim "to get back before I shoot," constituted an effective communication of the defendant's intent to withdraw from the encounter. He also claims that his walking across the small front lawn of 541 Gregory Street away from the house constituted a withdrawal and an effective communication thereof although no words were spoken. We disagree.

All of the defendant's communications of an alleged intent to withdraw from the conflict with the victim took place while the defendant kept the rifle in his hands and trained on the victim. " 'As long as a person keeps his gun in his hand prepared to shoot, the person opposing him is not expected or required to accept any act or statement as indicative of an intent to discontinue the assault.' " *State* v. *Huemphreus,* 270 N.W.2d 457, 462 (Iowa 1978), quoting 40 C.J.S., Homicide § 121; *Bellcourt* v. *State,* supra; see *State* v. *Muhammad,* 757 S.W.2d 641, 643 (Mo. App. 1988) ("Go on, go on leave me alone" insufficient to support withdrawal instruction). The defendant's communications were more in keeping with a demand that the victim withdraw in order to avoid being shot than an expression of the defendant's intent to break off and withdraw from the encounter himself.

It is telling, moreover, that the defendant at the conclusion of the trial did not mention the court's failure to charge § 53a-19 (c) (2) in its entirety in his motions for acquittal and for a new trial, nor is it mentioned specifically in his preliminary statement of issues on appeal.[4] The issue rather appears to be one that received little attention at trial because of the lack of evidence indicating withdrawal or the communication of an intent to withdraw, but, with the benefit of hind-

---

[4] The defendant did list as a preliminary issue "whether or not the trial court erred in its charge to the jury."

sight, was dredged up by appellate counsel painstakingly trawling through the record for possible errors. In our view, the evidence in this case simply does not support a communicated withdrawal instruction.

## II

The defendant next claims that the trial court improperly refused to give a requested charge that the jury had to be unanimous in its decision concerning certain statutory exceptions to his defense of self-defense as justification for his killing of the victim. The trial court informed the jury that the defendant was not justified in using deadly physical force in self-defense if he knew he could have avoided the necessity of using such force with complete safety by retreating or if he was the initial aggressor. See General Statutes § 53a-19 (b) (1) and (c) (2).[5] The court did not deliver an instruction requested by the defendant that in order to find him guilty, the jury must agree unanimously on which of the exceptions to justification for the use of deadly force applied. In other words, the defendant claims that one half of the jurors might have found that he knew he could have retreated with complete safety and therefore was not permitted to use deadly physical force, while the other half might have found that he was the initial aggressor and therefore was not permitted to use force in his own defense. The trial court did deliver a general unanimity charge instructing the jury that its verdict must be unanimous. The defendant claims that the general unanimity instruction was insufficient and that the trial court's charge violated his right to a unanimous verdict. We disagree.

As we noted in *State* v. *Bailey,* 209 Conn. 322, 335–36, 551 A.2d 1206 (1988), we have "serious reservation[s] about the applicability of the unanimity

---

[5] See footnote 3, supra.

requirement to self-defense . . . ." As in *Bailey,* the defendant here is unable to provide us with any authority for the proposition that a unanimity instruction was required as to the factual basis for the jury's rejection of his self-defense claim, nor have we been able to locate any. A determination of that issue, however, is not necessary for the resolution of the instant case.

"A general instruction on unanimity is sufficient to insure that . . . a unanimous verdict is reached; [*United States* v. *Peterson,* 768 F.2d 64, 67–68 (2d Cir.), cert. denied, 474 U.S. 923, 106 S. Ct. 257, 88 L. Ed. 2d 264 (1985)]; *United States* v. *Murray,* 618 F.2d 892, 898–99 (2d Cir. 1980); [*United States* v. *Natelli,* 527 F.2d 311, 325 (2d Cir. 1975), cert. denied, 425 U.S. 934, 96 S. Ct. 1663, 48 L. Ed. 2d 175 (1976)]; except in cases where the complexity of the evidence or other factors create a genuine danger of jury confusion. *United States* v. *Payseno,* 782 F.2d 832, 835–37 (9th Cir. 1986)." *United States* v. *Schiff,* 801 F.2d 108, 114–15 (2d Cir. 1986), cert. denied, 480 U.S. 945, 107 S. Ct. 1603, 94 L. Ed. 2d 789 (1987). "Moreover, a number of courts have acknowledged the need to avoid unwarranted multiplication of specific unanimity instructions by requiring such a charge only in 'cases where the complexity of the evidence or other factors create a genuine danger of jury confusion.' " *State* v. *Bailey,* supra, 337.

In the present case, the encounter between the victim and the defendant was a single incident, which was brief and took place within a small area. While the testimony bearing on the defendant's claim of self-defense varied somewhat from witness to witness, it certainly was not complicated and the trial was relatively short. We do not perceive in the record a complexity of evidence or any other factors creating jury confusion and a consequent need for a specific unanimity charge. See *United States* v. *Payseno,* supra, 836; *State* v. *Russell,*

22 Conn. App. 440, 448, 577 A.2d 1107 (1990). We are, therefore, not persuaded that the trial court was required to deliver such an instruction concerning the statutory exemptions to the defendant's self-defense claim.

The judgment is affirmed.

In this opinion the other justices concurred.