## JAMES DIGGS *v.* COMMISSIONER OF CORRECTION

Superior Court        Judicial District of       File No. CV96 324266S
                            Danbury

Memorandum filed January 22, 1999*

*Vicki H. Hutchinson*, special public defender, for the petitioner.

*Frederick W. Fawcett*, assistant state's attorney, for the respondent.

LEHENY, J. The petitioner, James Diggs, was found guilty of murder in violation of General Statutes § 53a-54 (a) after a jury trial. The trial court, *McKeever, J.*, sentenced the petitioner to a term of imprisonment of forty-six years. The petitioner appealed the conviction, and it was upheld on appeal. *State* v. *Diggs*, 219 Conn. 295, 592 A.2d 949 (1991).

At the time of the murder on October 2, 1988, the petitioner was sixteen years of age. He admitted to

* Affirmed. *Diggs* v. *Commissioner of Correction*, 57 Conn. App. 734, 750 A.2d 1151 (2000).

shooting and killing the victim, Frank Davis, but claimed it was justified because he acted in self-defense.

The petitioner filed a petition for writ of habeas corpus on March 11, 1996, alleging ineffective assistance of trial counsel. On September 29, 1997, he filed a revised amended petition that added a second count alleging ineffective assistance of appellate counsel. Before the trial began, the court had continued the case to allow counsel to attempt to locate his trial counsel, Antonio Granodos. He had been a public defender in Bridgeport at the time of trial. He later left the public defender's office and returned to Puerto Rico. The state's attorney's office obtained telephone numbers and names of contacts and left messages for Granodos where he was known to pick up messages. He could not be located, however, and the habeas trial proceeded without him.

The habeas case proceeded to trial on October 20, 1997, and February 17, 1998. During the trial, the petitioner's counsel introduced into evidence a copy of the trial transcripts. Those transcripts were mislaid and not included in the file. The court did not obtain those transcripts until well after October 13, 1998. The court has reviewed the trial transcripts, the transcripts of the habeas trial and the Supreme Court decision.

In the revised amended petition, the petitioner claimed that Granodos gave him incomplete and incorrect advice with regard to proceeding to a jury trial, failed to complete an adequate investigation of the facts of the case, failed to call vital witnesses at the time of trial, failed to impeach the state's witnesses and failed to correct or advise the trial court of an error in the presentence investigation report.

More specifically, the petitioner raised the following issues with regard to Granodos' representation: Granodos advised the petitioner against accepting a plea bargain of twenty years for a manslaughter conviction;

he successfully argued a motion in limine precluding evidence only to open the door to its admission by questioning a witness about that evidence; and he did not call an eyewitness to the event as a defense witness.

In the second count of his revised amended petition, the petitioner alleges that G. Douglas Nash, his appellate counsel, rendered ineffective assistance by failing to research and brief several key issues.

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution." (Citation omitted.) *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 153, 662 A.2d 718 (1995).

"In *Strickland* v. *Washington*, [466 U.S. 668, 104 S. Ct. 2052, 8 L. Ed. 2d 674 (1984)], the United States Supreme Court adopted a two-part standard for evaluating claims of ineffective assistance of counsel during criminal proceedings: the defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness . . . and (2) that defense counsel's deficient performance prejudiced the defense. . . . The petitioner in *Strickland* had argued that the applicable standard for showing prejudice should be that the error impaired the presentation of the defense. The court expressly rejected that standard, concluding that it provided no workable principle. . . . The court also expressly rejected the outcome-determinative standard: that counsel's conduct more likely than not altered the outcome in the case. . . . An ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat

lower. The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome. . . . Accordingly, relying on the test for materiality of exculpatory information not disclosed to the defense, the court reached a compromise that requires a petitioner to demonstrate that there is a reasonable probability that the result of the proceedings would have been different had it not been for counsel's deficient performance. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Citations omitted; internal quotation marks omitted.) *Copas* v. *Commissioner of Correction,* supra, 234 Conn. 154–55.

"The court imposed this prejudice requirement because [t]he government is not responsible for, and hence not able to prevent, attorney errors that will result in reversal of a conviction or sentence. Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice. Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid. Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense." (Internal quotation marks omitted.) Id., 155–56.

"With regard to the performance component of this inquiry, the defendant must show that counsel's representation fell below an objective standard of reasonableness. . . . The constitution guarantees only a fair trial and a competent attorney; it does not ensure that

every conceivable constitutional claim will be recognized and raised. . . . The defendant is also not guaranteed assistance of an attorney who will make no mistakes. . . . What constitutes effective assistance [of counsel] is not and cannot be fixed with yardstick precision, but varies according to the unique circumstances of each representation." (Citations omitted; internal quotation marks omitted.) *Jeffrey* v. *Commissioner of Correction*, 36 Conn. App. 216, 219, 650 A.2d 602 (1994).

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) Id., 219–20.

"Even if trial counsel's assistance is shown to be ineffective, the petitioner cannot succeed in his claim unless he proves prejudice. . . . This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

. . . An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Citations omitted; internal quotation marks omitted.) Id., 220–21.

"A court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance if it is easier to dispose of the claim on the ground of insufficient prejudice." (Internal quotation marks omitted.) *Taft* v. *Commissioner of Correction*, 47 Conn. App. 499, 504, 703 A.2d 1184 (1998).

"A habeas court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. . . . [A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." (Internal quotation marks omitted.) *Harris* v. *Commissioner of Correction*, 40 Conn. App. 250, 257, 671 A.2d 359 (1996).

"Habeas courts often order new trials in cases where petitioners have been convicted in trials tainted by ineffective assistance of counsel." *State* v. *Connelly*, 46 Conn. App. 486, 496, 700 A.2d 694 (1997), cert. denied, 244 Conn. 907, 908, 713 A.2d 829, cert. denied, 525 U.S. 907, 119 S. Ct. 245, 142 L. Ed. 2d 201 (1998).

I

TRIAL COUNSEL

At his murder trial, the petitioner did not deny killing the victim, but asserted that he shot the victim in self-defense.

The following are the facts as set forth in the Supreme Court opinion on appeal that underlay the petitioner's conviction. "The conflict between the [petitioner] and the victim was ignited when the victim, after parking his car on Gregory Street, approached a group of youths, including the defendant, that had gathered around the front porch of 541 Gregory Street. At that time words were exchanged between the victim and the [petitioner]. Thereafter, the [petitioner] jumped from the porch and retrieved the .22 caliber rifle that the [petitioner] knew had been placed under the porch earlier in the evening by a friend. The [petitioner] then confronted the victim with the rifle. The victim's cousin, Rayford Scott, who had come to Gregory Street with the victim, crossed the street and attempted to defuse an argument that had clearly gotten out of hand. The victim and the [petitioner] continued to argue and to threaten, however, and the victim threw a punch at the [petitioner]. . . . [A]fter the punch was thrown, the [petitioner] shot the victim. The single bullet pierced the victim's right side, striking his heart and lungs and causing massive internal bleeding and death." *State* v. *Diggs*, supra, 219 Conn. 298.

In connection with the petitioner's claim of self-defense, the court found that the "record contains no

evidence that reasonably would support a finding that the [petitioner] had withdrawn from the encounter with the victim or had clearly manifested his intention to do so." Id., 299.

The petitioner asserts that the state offered a plea bargain, but he refused it on counsel's advice. Granodos told the petitioner that he could win at trial because the self-defense claim would be successful and the state's evidence was not strong enough to convict him. Granodos told the petitioner to make the state "either let you go or keep you." The petitioner's mother, his guardian ad litem at trial, was present for one of these discussions, the petitioner's grandmother at another. They did not advise the petitioner to reject this advice.

While the petitioner claims that the plea offer was made on more than one occasion, the last time at the beginning of jury deliberations, Linda Knight Howe, the prosecutor at the time of trial, gave persuasive testimony as to why this claim was not correct. In March, 1989, while being held in jail prior to trial, the petitioner had been involved in an incident in the lockup at Bridgeport. He allegedly assaulted a state's witness, a prison inmate who had testified against another prisoner who had burned a third prisoner. Because of this, state's attorney Donald Browne, who was Knight's supervisor, and Judge Richard Damiani did not authorize any further pretrial offers. The court finds that Granodos was not responsible for the breakdown of the plea bargaining negotiations. The petitioner's conduct caused the offer to be withdrawn, so it was not available to him at the time of trial.

Granodos decided not to call the petitioner's friend, Kareem Hedge. Hedge was an eyewitness to the murder and standing close to the petitioner when he shot the victim. The petitioner claimed that Hedge would have

made a better witness than some of the other eyewitnesses who testified for the defense because the petitioner believed that they were "nervous." It is unclear what the petitioner claims the eyewitnesses would have testified to had they not been "nervous."

The victim was described as reaching into his right back pocket with his right hand. No eyewitness, including Thomas Dawkins, in a wheelchair, who managed to grab the victim before the shooting, testified as to actually seeing a gun. No gun was found among the victim's possessions at the hospital. Furthermore, on rebuttal the state presented evidence that the victim was left-handed.

Granodos clearly chose not to put Hedge on the stand because Hedge was facing a larceny charge for the theft of an automobile and may also have been on probation for a youthful offender charge. At the habeas trial, the court found Hedge's testimony less than compelling. Although the court recognizes that nearly one decade intervened between the shooting and the habeas trial, Hedge's recollection added little to the testimony of the other eyewitnesses at the time of the trial.

The most compelling claim raised by the petitioner is Granodos' error in allowing into evidence matters he had successfully argued to omit—that the petitioner had allegedly shot at Richard Gee, the victim's nephew before killing the victim. Even if counsel was deficient in his performance, this court does not find that counsel's error prejudiced the outcome of the trial given the totality of the evidence. The petitioner did not meet his burden of proving that Granodos failed to complete an adequate investigation of the facts. If Granodos failed to learn that the victim was left-handed, it is not clear how that fact would have assisted the petitioner in his assertion that the victim reached into his right back pocket. The court also does not find that the petitioner

has met his burden of proving that trial counsel failed to impeach the state's witnesses or to correct the pre-sentence investigation report to the extent that these matters would have prejudiced the trial's outcome or the petitioner's sentence.

While counsel's performance may have not been as proficient as the petitioner desired, the petitioner has failed to show that counsel's performance prejudiced his case. From the totality of the evidence, including the petitioner's testimony as well as the testimony of eyewitnesses, both on direct and cross-examination, the jury could have reasonably concluded as it did.

For the foregoing reasons, this court does not find that Granodos' representation of the petitioner provides grounds for the granting of the habeas petition on the first count.

## II

## APPELLATE COUNSEL

The petitioner claims that Nash failed to raise issues on appeal concerning the judge's and the prosecutor's expressed opinions of facts, and the trial court's instructions to the jury regarding circumstantial evidence, self-defense and intoxication.

Nash received the case for appeal from Granodos, who did not file a timely brief. Nash advised Granodos to file for an extension and met with Granodos several times to discuss the issues to be raised. Granodos suggested approximately six issues: unspecified judicial misconduct; the charge on circumstantial evidence; the charge on reasonable doubt; the self-defense charge; an issue regarding the marshaling of facts, which Nash was not sure Granodos understood; and the fact that misconduct evidence regarding Gee, which had been the subject of the petitioner's motion in limine and which was granted by the court, was admitted after

Granodos raised the issue himself in questioning. Nash also met with the petitioner, perhaps after he had filed his brief. The petitioner raised no issues to be appealed. Nash found no prosecutorial or judicial misconduct sufficient to raise on appeal and concentrated on briefing and arguing the issue of self-defense and an issue Nash, himself, raised, the unanimity charge.

On appeal, the petitioner's first claim was that the trial court improperly failed to instruct the jury that if it found that the petitioner was the initial aggressor, his use of physical force would be justified if he had withdrawn from the encounter and communicated his intention to do so, pursuant to General Statutes § 53a-19 (c) (2). The Supreme Court stated: "We have conducted a thorough search of the transcript and conclude that the record contains no evidence that reasonably would support a finding that the [petitioner] had withdrawn from the encounter with the victim or had clearly manifested his intention to do so." *State* v. *Diggs*, supra, 219 Conn. 299. In fact, the court noted that "[t]he issue . . . received little attention at trial because of the lack of evidence indicating withdrawal or the communication of an intent to withdraw, but, with the benefit of hindsight, was dredged up by appellate counsel painstakingly trawling through the record for possible errors." Id., 300–301. The court concluded, "[i]n our view the evidence in this case simply does not support a communicated withdrawal instruction." Id., 301.

The second claim was that "the trial court improperly refused to give a requested charge that the jury had to be unanimous in its decision concerning certain statutory exceptions to its defense of self-defense as justification for his killing of the victim." Id. The Supreme Court did not agree with this claim.

This court cannot find sufficient evidence to sustain the petitioner's claim that Nash was ineffective. The

court notes the comment of the Supreme Court regarding the "painstaking trawling" of appellate counsel. The court finds that Nash considered the issues regarding the evidence originally precluded by the motion in limine and decided that it could not be raised on appeal because it was not preserved on the record. He also could not find any evidence of prosecutorial or judicial misconduct. The court concludes that Nash's performance was not deficient.

The petition is dismissed.