[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner, James Diggs, was found guilty of murder in violation of C.G.S. § 53a-54(a) after a jury trial. The trial court, McKeever, J., sentenced Diggs to a term of imprisonment of forty-six years. The petitioner appealed the conviction and it was upheld on appeal. State v. Diggs, 219 Conn. 295 (1991).
At the time of the murder on October 2, 1988, the defendant was sixteen years of age. He admitted shooting and killing the victim, Frank Davis, but claimed it was justified because he acted in self-defense.
The petitioner filed a petition for writ of habeas corpus on March 11, 1996 alleging ineffective assistance of trial counsel. On September 29, 1997 he filed a Revised Amended Petition which added a second count alleging ineffective assistance of appellate counsel. Before the trial began the court had continued the case to allow counsel to attempt to locate Granodos. He had been a public defender in Bridgeport at the time of trial. He later left the public defender's office and returned to Puerto Rico. The state's attorney's office obtained telephone numbers and names of contacts and left messages for Granodos where he was known to pick up messages. He could not be located, however, and the habeas trial proceeded without him.
The habeas case proceeded to trial on October 20, 1997 and February 17, 1998. During the trial petitioner's counsel introduced into evidence a copy of the trial transcripts. These transcripts were mislaid and not associated with the file. The court did not obtain these transcripts until well after October CT Page 244 13, 1998. The court has reviewed the trial transcripts, the transcripts of the habeas trial and the appellate case, State v.Diggs, supra.
In the Revised Amended Petition the petitioner claimed that trial counsel, Antonio Granodos, gave him incomplete and incorrect advice with regard to proceeding to a jury trial; failed to complete an adequate investigation of the facts of the case; failed to call vital witnesses at the time of trial; failed to impeach the state's witnesses; and failed to correct or advise the trial court of an error in the pre-sentence investigation report.
More specifically the petitioner raised the following issues with regard to Granodos' representation: that Granodos advised the defendant against accepting a plea bargain of 20 years for a manslaughter conviction; that he successfully argued a motion in limine precluding evidence only to open the door to its admission by questioning a witness about that evidence; and that he did not call an eyewitness to the event as a defense witness.
In the second count of his Revised Amended Petition Diggs alleges that G. Douglas Nash, his appellate counsel, rendered ineffective assistance by failing to research and brief several key issues.
 DISCUSSION
A. INEFFECTIVE ASSISTANCE OF COUNSEL
"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution." (Citation omitted.) Copas v. Commissioner ofCorrection, 234 Conn. 139, 153, 662 A.2d 718 (1995).
"In Strickland v. Washington . . . the United States Supreme Court adopted a two-part standard for evaluating claims of ineffective assistance of counsel during criminal proceedings: the defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness . . . and (2) that defense counsel's deficient performance prejudiced the defense. . . . The petitioner in Strickland had argued that the CT Page 245 applicable standard for showing prejudice should be that the error impaired the presentation of the defense. The court expressly rejected that standard, concluding that it provided no workable principle. . . . The court also expressly rejected the outcome-determinative standard: that counsel's conduct more likely than not altered the outcome of the case. . . . An ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower. The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome. . . . Accordingly, relying on the test for materiality of exculpatory information not disclosed to the defense, the court reached a compromise that requires a petitioner to demonstrate that there is a reasonable probability that the result of the proceedings would have been different had it not been for counsel's deficient performance. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id." (Citations omitted; internal quotation marks omitted.) Copas v. Commissioner of Correction, supra,234 Conn. 154-55.
"The court imposed this prejudice requirement because [t]he government is not responsible for, and hence not able to prevent, attorney errors that will result in reversal of a conviction or sentence. Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice. Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid. Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense." (Internal quotation marks omitted.) Copas v. Commissioner ofCorrection, supra, 234 Conn. 255.
"With regard to the performance component of this inquiry, the defendant must show that counsel's representation fell below an objective standard of reasonableness. . . . The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be CT Page 246 recognized and raised. . . . The defendant is also not guaranteed assistance of an attorney who will make no mistakes . . . What constitutes effective assistance [of counsel] is not and cannot be fixed with yardstick precision, but varies according to the unique circumstances of each representation." (Citations omitted; internal quotation marks omitted.) Jeffrey v.Commissioner of Correction, 36 Conn. App. 216, 219, 650 A.2d 602
(1994).
"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.)Jeffrey v. Commissioner of Correction, supra,36 Conn. App. 219-20.
"Even if trial counsel's assistance is shown to be ineffective, the petitioner cannot succeed in his claim unless he proves prejudice. . . . This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. . . . An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . When a CT Page 247 [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have a reasonable doubt respecting guilt." (Citations omitted; internal quotation marks omitted.) Jeffreyv. Commissioner of Correction, 36 Conn. App. 220-21.
"A court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance if it is easier to dispose of the claim on the ground of insufficient prejudice." (Internal quotation marks omitted.) Taft v.Commissioner of Correction, 47 Conn. App. 499, 504, 703 A.2d 1184
(1998).
"A habeas court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. . . . [A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." (Internal quotation marks omitted.) Harris v. Commissioner of Correction,40 Conn. App. 250, 257, 671 A.2d 359 (1996).
"Habeas courts often order new trials in cases where petitioners have been convicted in trials tainted by ineffective assistance of counsel." State v. Connelly, 46 Conn. App. 486,496, 700 A.2d 694 (1997).
B. Trial Counsel
At his murder trial the petitioner did not deny killing the victim, Frank Davis, but asserted that he shot at the victim in self-defense.
The following are the facts as set forth in the Supreme Court opinion on appeal that underlay the petitioner's conviction.
The conflict between the defendant and the victim was ignited when the victim, after parking his car on Gregory Street, approached a group of youths, including the defendant, that had gathered around the front CT Page 248 porch of 541 Gregory Street. At that time words were exchanged between the victim and the defendant. Thereafter, the defendant jumped from the porch and retrieved the .22 caliber rifle that the defendant knew had been placed under the porch earlier in the evening by a friend. The defendant then confronted the victim with the rifle. The victim's cousin, Rayford Scott, who had come to Gregory Street with the victim, crossed the street and attempted to defuse an argument that had clearly gotten out of hand. The victim and the defendant continued to argue and to threaten, however, and the victim threw a punch at the defendant . . . after the punch was thrown, the defendant shot the victim. The single bullet pierced the victim's right side striking his heart and lungs and causing massive internal bleeding and death. State v. Diggs, supra, 219 Conn. 298.
In connection with the defendant's claim of self-defense, the court found that the "record contains no evidence that reasonably would support a finding that the defendant had withdrawn from the encounter with the victim or had clearly manifested his intention to do so." State v. Diggs, supra, 299.
The petitioner asserts that the state offered a plea bargain but he refused it upon counsel's advice. Granodos told Diggs that he could win at trial because the self-defense claim would be successful and the state's evidence was not strong enough to convict him. Granodos told Diggs to make the state "either let you go or keep you." The petitioner's mother, his guardian ad litem at trial, was present for one of these discussions, Diggs' grandmother at another. They did not advise Diggs to reject this advice.
While Diggs claims the plea offer was made on more than one occasion, the last time at the beginning of jury deliberations, Linda Knight Howe, the prosecutor at the time of trial, however, gave persuasive testimony as to why this claim was not correct. In March, 1989, while being held in jail prior to trial, the petitioner had been involved in an incident in the lockup at Bridgeport. He allegedly assaulted a state's witness, a prison inmate who had testified against another prisoner who had burned a third prisoner. Because of this, Donald Browne, Attorney Knight's supervisor, and Judge Richard Damiani, did not authorize any further pretrial offers. The court finds that Granodos CT Page 249 was not responsible for the breakdown of the plea bargaining negotiations. The defendant's conduct caused the offer to be withdrawn, so it was not available to him at the time of trial.
Granodos decided not to call the petitioner's friend, Kareem Hedge. Hedge was an eyewitness to the murder and standing close by the petitioner when he shot Davis. Diggs claimed that Hedge would have made a better witness than some of the other eyewitnesses who testified for the defense because Diggs believed they were "nervous." It is unclear what the defendant claims the eyewitnesses would have testified to had they not been "nervous."
The victim was described as reaching into his right back pocket with his right hand. No eyewitness, including Thomas Dawkins, in a wheelchair, who managed to grab the victim before the shooting, testified as to actually seeing a gun. No gun was found among the victim's possessions at the hospital. Furthermore, on rebuttal the state presented evidence that the victim was left-handed.
Granodos clearly chose not to put Hedge on the stand because Hedge was facing a larceny charge for the theft of an automobile and may also have been on probation for a youthful offender charge. At the habeas trial the court found Hedge's testimony less than compelling. Although the court recognizes that nearly a decade intervened between the shooting and the habeas trial, his recollection added little to the testimony of the other eyewitnesses at the time of the trial.
The most compelling claim raised by the petitioner is Granodos' error in allowing into evidence matters he had successfully argued to omit; that Diggs had allegedly shot at Richard Gee, the victim's nephew before the killing of Davis. Even if counsel was deficient in his performance, this court does not find that counsel's error prejudiced the outcome of the trial given the totality of the evidence. The petitioner did not meet his burden of proving that Granodos failed to complete an adequate investigation of the facts. If Granodos failed to learn that Davis was left-handed, it is not clear how that fact would have assisted the defendant in his assertion that Davis reached into his right back pocket. The court also does not find the petitioner has met his burden of proving that trial counsel failed to impeach the state's witnesses or correct the pre-sentence investigation report to the extent that these matters would have prejudiced the trial's outcome or the CT Page 250 defendant's sentence.
While counsel's performance may have not been as proficient as the petitioner desired, the petitioner has failed to show that counsel's performance prejudiced his case. From the totality of the evidence, including the petitioner's testimony as well as the testimony of eyewitnesses, both on direct and cross examination, the jury could have reasonably concluded, as it did.
For the foregoing reasons, this court does not find that Granodos' representation of the petitioner provides grounds for the granting of the habeas petition on the first count.
C. Appellate Counsel
Diggs claims that G. Douglas Nash failed to raise issues on appeal concerning the judge's and the prosecutor's expressed opinions of facts, and the trial court's instructions to the jury regarding circumstantial evidence, self-defense and intoxication.
Nash received the case for appeal from Granodos who did not file a timely brief. Nash advised Granodos to file for an extension and met with Granodos several times to discuss the issues to be raised. Granodos suggested approximately six issues: unspecified judicial misconduct; the charge on circumstantial evidence; the charge on reasonable doubt; the self-defense charge; an issue regarding the marshaling of facts which Nash was not sure Granodos understood; and the fact that misconduct evidence regarding Richard Gee, which had been the subject of the defendant's motion in limine and which was granted by the court, was admitted after Granodos raised the issue himself in questioning. Nash also met with Diggs, perhaps after he had filed his brief. Diggs raised no issues to be appealed. Nash found no prosecutorial or judicial misconduct sufficient to raise on appeal and concentrated on briefing and arguing the issue of self-defense and an issue Nash, himself, raised, the unanimity charge.
On appeal, the defendant's first claim was that the trial court erred in failing to instruct the jury that, if it found the defendant was the initial aggressor, his use of physical force would be justified if he had withdrawn from the encounter and communicated his intention to do so, pursuant to General Statutes § 53a-19(c)(2). The court stated, "We have conducted a thorough search of the transcript and conclude that the record CT Page 251 contains no evidence that reasonably would support a finding that the defendant had withdrawn from the encounter with the victim or had clearly manifested his intention to do so. . . . Id., 299. In fact, the court noted that "the issue received little attention at trial because of the lack of evidence indicating withdrawal or the communication of an intent to withdraw but, with the benefit of hindsight, was dredged up by appellate counsel painstakingly trawling through the record for possible errors" State v. Diggs, supra, 300-301. The court concluded, "In our view the evidence in this case simply does not support a communication withdrawal instruction." State v. Diggs, supra, 301.
The second claim was that the trial court improperly refused to give a requested charge that the jury had to be unanimous in its decision concerning certain statutory exceptions to its defense of self-defense as justification for his killing of the victim." State v. Diggs, supra, 219 Conn. 301. The court did not agree with this claim.
The court cannot find sufficient evidence to sustain the petitioner's claim that Nash was ineffective. The court notes the comment of the Supreme Court regarding the "painstaking trawling" of appellate counsel. The court finds that Nash considered the issues regarding the evidence originally precluded by the motion in limine and decided that it could not be raised on appeal because not preserved on the record. He also could not find any evidence of prosecutorial or judicial misconduct. The court concludes that Nash's performance was not deficient.
SANDRA VILARDI LEHENY, J. CT Page 252