******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* SHOTA MEKOSHVILI
(AC 42144)

Lavine, Devlin and Beach, Js.

*Syllabus*

Convicted, following a jury trial, of the crime of murder in connection with
the stabbing death of the victim, the defendant appealed, claiming, inter
alia, that the trial court erred by admitting certain testimony from the
victim's wife and the victim's business partner, A. The victim, a taxi cab
driver, was stabbed to death during his evening shift on a Tuesday night,
and money was stolen from the taxi's glove compartment. During the
trial, the victim's wife stated that on the night of the victim's murder,
he returned home briefly to retrieve money to pay for his portion of a
certain taxi fee and to send money to his family overseas. A testified
that the victim regularly placed his portion of the taxi fee in the glove
compartment on Tuesday nights for A to pay the following day. *Held:*
1. The defendant could not prevail on his claim that the wife's testimony
   regarding statements made to her by the victim was irrelevant as to
   whether the defendant killed the victim or whether he acted with crimi-
   nal intent; the wife's testimony regarding the victim's statements reason-
   ably could have made it more likely that the defendant had a financial
   motive in killing the victim and less likely that the killing was the result
   of self-defense, as claimed by the defendant, and the defendant's claim
   that the victim's statements to his wife were self-serving and backward
   looking and, thus, did not satisfy the state of mind exception to the
   hearsay rule was unavailing, as the victim's statement to his wife indi-
   cated his intention to take money to pay the taxi company in the immedi-
   ate future, and although the part of the statement indicating that he had
   taken money for that purpose was retrospective, it provided context as
   for the expression of his intention to pay his taxi fees and send money
   to his family, and at the time the victim made those statements to his
   wife, no crime had been committed nor was one foreseeable.
2. The defendant could not prevail on his claim that the trial court improperly
   allowed testimony from A, pursuant to the habit exception of the hearsay
   rule, regarding the victim's customary habit of leaving his portion of
   the taxi fee in the glove compartment of the taxi on Tuesday nights, as
   A's testimony was relevant to the issue of motive for the defendant to
   kill the victim; the jury reasonably could have inferred from A's testimony
   that the victim had placed money in the glove compartment of the taxi
   that was, thereafter, taken by the defendant, and that financial gain
   could have been the motive for murder, and the defendant's claim that
   the state failed to provide an adequate foundation for the admission of
   A's testimony regarding habit evidence was unavailing, as there is no
   particular numerical threshold that must be met in order for a person's
   conduct to rise to the level of habit, and A's testimony established that
   the victim's specific conduct of leaving his portion of the taxi fee in
   the glove compartment of the taxi on Tuesday nights constituted a
   sufficiently regular practice.
3. The trial court properly instructed the jury with a general unanimity
   charge and did not err in failing to grant the defendant's request for
   a specific unanimity charge as to the claim of self-defense; the jury
   instructions, viewed in their totality, were correct in law and fairly
   presented the case to the jury, as each of the four elements of a claim
   of self-defense were explained in detail and in accordance with the
   model jury charge, the factual scenario in the present case was not
   especially complex and the defendant's course of conduct did not com-
   prise separate incidents, and because the trial court did not sanction a
   nonunanimous verdict, a unanimity instruction on the claim of self-
   defense was not required.

Argued September 23, 2019—officially released January 7, 2020

*Procedural History*

Substitute information charging the defendant with

the crime of murder, brought to the Superior Court in the judicial district of Stamford and tried to the jury before *Blawie, J.*; verdict and judgment of guilty, from which the defendant appealed. *Affirmed.*

*Norman A. Pattis*, with whom, on the brief, was *Kevin Smith*, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Richard J. Colangelo, Jr.*, state's attorney, and *James Bernardi*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Shota Mekoshvili, appeals from the judgment of conviction, rendered on a jury verdict of murder in violation of General Statutes § 53a-54a. He claims that the trial court erred by (1) admitting testimony under the state of mind exception to the hearsay rule, (2) admitting testimony regarding the victim's habit, and (3) refusing to include in the jury instructions a unanimity charge as to whether the state had disproven an element of the defendant's self-defense claim. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found from the evidence presented and the reasonable inferences drawn therefrom, and procedural history are relevant on appeal. The victim, Mohammed Kamal, operated a taxi with his business partner, Jean Antoine. Antoine worked the day shift, generally from 6 a.m. to 6 p.m., and the victim worked the night shift, generally from 6 p.m. to 6 a.m. The cab was registered with Stamford Taxi (company), and the partners paid a weekly fee totaling $475 to the company. The fee was due on Wednesdays at noon. The victim customarily placed his share of the fee in the glove compartment of the vehicle during his Tuesday night shift, and Antoine removed the money and delivered it to the company on Wednesday mornings.

On the evening of Tuesday, August 26, 2014, the victim left home for his shift in the taxi between 9 p.m. and 10 p.m. At approximately 12:30 a.m. on August 27, the victim briefly returned home and told his wife that he had forgotten to take the money for his share of the fee that he needed to leave in the taxi; he said he also planned to send some money to his family in Bangladesh. The victim's wife observed him take money out of an armoire, after which the victim returned to his shift. At approximately 3 a.m., the defendant hailed the victim's taxi and directed the victim to drive to Doolittle Road, in Stamford. While on Doolittle Road, the defendant began to stab the victim repeatedly. At some point, the defendant opened the glove compartment, stole the money that the victim had set aside for the taxi fee and for his family in Bangladesh, took the victim's credit card, and fled the scene toward the defendant's apartment.

While fleeing from the scene, the defendant called a friend, Eugene Goldshtyen, several times and offered Goldshtyen $100 to pick him up. Goldshtyen met the defendant at the defendant's apartment and asked whether the defendant received his injuries during a burglary. The defendant falsely replied "yeah" and explained that he encountered the homeowner during the burglary and started fighting with the homeowner, whom he stabbed multiple times. The defendant said that "[w]hen the homeowner 'kept yelling' despite the

defendant's order to 'shut up,' the defendant 'just kept stabbing him and stabbing him.' " Not believing the defendant's story, Goldshtyen called the police.

Later that morning, Stamford Police located the victim's body and the taxi at 150 Doolittle Road. The victim's body was found on the ground, and an autopsy revealed that the victim had been stabbed 127 times. The taxi's glove compartment was open and no money was found inside. The victim's and the defendant's blood was found on the rear driver's side passenger seat and door. The police arrested the defendant and charged him with murder in violation of § 53a-54a. The money, which the state claimed had been stolen, was not recovered.

Prior to trial, the state filed a motion in limine seeking to introduce the testimony of two witnesses: (1) testimony from the victim's wife that when the victim returned home briefly from his shift at 12:30 a.m., she saw him retrieve money from the armoire, and the victim then told her that "he intended to use this money to pay his dispatch fees and to send money home to Bangladesh"; and (2) testimony from the victim's taxi partner, Antoine, that it "was [the victim's] habit and custom to leave his share [of the taxi fee] in the glove compartment" for Antoine to give to the company the next morning. The trial court held a hearing on the matter and subsequently admitted the testimony of both witnesses.

The jury returned a verdict finding the defendant guilty of murder in violation of § 53a-54a. Thereafter, the court imposed a total effective sentence of sixty years of incarceration. The defendant filed an appeal in our Supreme Court, and the appeal was transferred to this court on September 24, 2018.

"Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *State* v. *Russo*, 62 Conn. App. 129, 133, 773 A.2d 965 (2001). In reviewing for an abuse of discretion, "the ultimate issue is whether the court could reasonably conclude as it did." *DiPalma* v. *Wiesen*, 163 Conn. 293, 299, 303 A.2d 709 (1972).

I

We first address the defendant's claim that the trial court erred in allowing testimony from the victim's wife that the victim told her, after briefly returning home during his shift, that he was getting money to leave inside the taxi to pay his share of the taxi fee and to

send to his family in Bangladesh after his shift. Specifically, the defendant claims that such statements (1) were irrelevant and (2) did not satisfy the state of mind exception to the hearsay rule because they were self-serving and backward looking. We disagree.

The following additional facts are relevant to this issue. At trial, the state called the victim's wife as a witness. She testified about statements that the victim had made to her when he briefly returned home during his night shift. She testified: "He took the money and he told me that he had to take the money because the next day, he had to make the taxi payment. The taxi payment was done once a week. The payment for the taxi was done once a week. And he also said to me that he needed more money to send to Bangladesh and the banks were closed at night, when he was on duty, so he was taking the money at night, so that the next day, when he got off duty, he was going to go to the bank and send some money to Bangladesh."

The defendant first claims that the victim's statements to his wife "had no relevant connection to a fact in issue." According to the defendant, the only facts at issue were whether the defendant had killed the victim and, if he had done so, whether he acted with criminal intent and without justification. He further asserts that "whether [the victim] had intended or planned to pay taxi related expenses the next day was simply inapposite to the matters to be decided by the jury, and to admit such evidence could only lead to confusion and speculation." We disagree.

The Connecticut Code of Evidence provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the constitution of the United States, the constitution of the state of Connecticut, the Code, the General Statutes or the common law." Conn. Code Evid. § 4-2. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1. "The materiality of evidence turns upon what is at issue in the case, which generally will be determined by the pleadings and the applicable substantive law." Conn. Code Evid. § 4-1, commentary. "The trial court is given broad discretion in determining the relevancy of evidence and its decision will not be disturbed absent a clear abuse of that discretion." *State* v. *Holliman*, 214 Conn. 38, 50, 570 A.2d 680 (1990).

In the state's motion in limine, the state addressed the relevancy of the statements and claimed that it sought to introduce this evidence to controvert the defendant's claim of self-defense. The state explained: "[The defendant] claims he was fending off the aggressive sexual overtures of the victim. In such case the unexplained absence of valuables is of utmost rele-

vance. The state intends to offer the [victim's] statements concerning his intent to bring sufficient money to satisfy his cab fees in order to show robbery as the motive." The proffered statements reasonably could have tended to make it more likely that the defendant had a financial motive in killing the victim and to make it less likely that the killing was a result of self-defense.

The defendant next claims that the statements by the victim to his wife were both backward looking and self-serving and, therefore, did not satisfy the state of mind hearsay exception. The Connecticut Code of Evidence provides exceptions to the hearsay rule, among them: "A statement of the declarant's then existing mental or emotional condition, including a statement indicating a present intention to do a particular act in the immediate future, provided that the statement is a natural expression of the condition and is not a statement of memory or belief to prove the fact remembered or believed." Conn. Code Evid. § 8-3 (4). "The hearsay statements of an unavailable declarant, made in good faith and not for a self-serving purpose, that express his or her present intentions to [do something] in the immediate future are admissible and allow the trier of fact reasonably to infer that the declarant's expressed intention was carried out." *State* v. *Santangelo*, 205 Conn. 578, 592, 534 A.2d 1175 (1987). "[F]orward-looking statements of intention are admitted while backward-looking statements of memory or belief are excluded because the former do not present the classic hearsay dangers of memory and narration." *State* v. *Saucier*, 283 Conn. 207, 225, 926 A.2d 633 (2007), citing 2 C. McCormick, Evidence (6th Ed. 2006) § 276, p. 279.

In its ruling on the motion in limine, the trial court explained that the victim's statement was "a declaration of an intention casting light upon the future, it is distinguishable from any declaration of memory pointing backward to the past and this is not the case here." We agree. The victim's statement to his wife indicated his intention to take money to pay the taxi company in the immediate future. It is true that part of the statement, to the effect that the victim *had* taken the money for that purpose, was retrospective, but his having taken the money only provided context for the expression of his intention. We also are unpersuaded by the defendant's claim that the victim's statement was self-serving. At that point, no crime had been committed nor was one foreseeable.

The trial court did not abuse its discretion in admitting the wife's testimony as to statements made to her by the victim pursuant to the Connecticut Code of Evidence § 8-3 (4).[1]

## II

We next address the defendant's claim that the trial court improperly allowed testimony from the victim's

business partner, Antoine, pursuant to the habit exception to the hearsay rule, that the victim routinely put his share of the taxi fees in the glove compartment of the vehicle before Antoine's day shift on Wednesdays. The defendant claims that such evidence was (1) irrelevant and (2) insufficient to establish a "habit" pursuant to the hearsay exception.

The following facts, as previously set forth, are relevant to this issue. Antoine testified about his business relationship with the victim and their arrangement for payment of the taxi fees to the company that were due weekly. According to Antoine, he and the victim jointly owned and operated a cab beginning approximately a year and a half to two years prior to the victim's murder, and that they paid a weekly fee to the company. He explained that they would each contribute $237.50 for the fees every week. Antoine further testified that the victim would always leave his half of the fees in the glove compartment, and when Antoine picked up the car on Wednesday mornings, he would take the money from the glove compartment and drop it off at the company, along with his half.

The defendant claims that Antoine's testimony was not relevant to any material issue; the only material issues were whether the victim was murdered by the defendant and, if so, whether the defendant was justified in killing the victim. The defendant contends that Antoine's testimony allowed the state to "confuse the jury and inject the specter of robbery into a case where it had charged none." The state, however, asserts that "evidence that the victim's habit was to leave money in the taxi's glove compartment for pick up on Wednesday mornings, coupled with the fact that the murder took place early Wednesday morning inside the taxi and that, after the murder, the glove compartment was found open without any money . . . allowed the jury to infer that the motive for the murder was to take the victim's money." We are persuaded by the state's claim that Antoine's testimony was relevant to the issue of motive for the defendant to kill the victim.

In *State* v. *Williams*, 90 Conn. 126, 96 A. 370 (1916), our Supreme Court upheld a trial court's admission of habit evidence regarding the victim's habit of carrying money in his pocketbook to show the defendants' motive for murdering the victim. Id., 130. It concluded that, based on the habit evidence, "the jury would be justified in presuming that [the victim] had his pocketbook where he usually carried it, in his pocket . . . and it was there found, and thence taken by the [defendants]." Id. In the present case, the jury reasonably could have inferred from Antoine's testimony that the victim had placed money in the glove compartment of the taxi that was thereafter taken by the defendant. Although robbery was not charged, financial gain could well have been the motive for murder. Accordingly, we

conclude that the trial court properly found that such evidence was relevant.

Next, we turn to the defendant's claim that the state failed to provide an adequate foundation for the admission of the habit evidence. Specifically, he claims that the proffered evidence did not rise to the level of habit because there was insufficient evidence as to the number of times that the victim engaged in the conduct. According to the defendant, "[it] was not truly evidence of the decedent's personal habit of leaving money in the shared glovebox, so much as it was evidence of Antoine's personal experience of having regularly paid taxi related expenses on a certain day of the week."

The Connecticut Code of Evidence provides that "[e]vidence of the habit of a person . . . is admissible to prove that the conduct of the person . . . on a particular occasion was in conformity with the habit . . . ." Conn. Code Evid. § 4-6. "[H]abit is a person's regular practice of responding to a particular kind of situation with a specific type of conduct. . . . [H]abit . . . refer[s] to a course of conduct that is fixed, invariable, and unthinking, and generally pertain[s] to a very specific set of repetitive circumstances." (Citations omitted.) Conn. Code Evid. § 4-6, commentary.

We are unpersuaded by the defendant's contention that there is a particular numerical threshold that must be met in order for a person's conduct to rise to the level of a habit. Here, Antoine's testimony established that the victim's specific conduct of leaving his portion of the taxi fee in the glove compartment of the taxi on Tuesday nights constituted a sufficiently regular practice. As such, we conclude that the trial court properly admitted Antoine's testimony regarding the victim's habit, pursuant to Connecticut Code of Evidence § 4-6.[2]

### III

Finally, we address the defendant's claim that the trial court improperly refused to instruct the jury that it could not reach a verdict of guilty unless it was unanimous as to the basis for rejecting the defendant's self-defense claim. He claims that the general unanimity instruction was insufficient and that the trial court's charge violated his state constitutional right to be convicted by the unanimous verdict of the jury. We disagree.

"[I]ndividual jury instructions should not be judged in artificial isolation . . . but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . .

Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury. . . . A challenge to the validity of jury instructions presents a question of law over which [we have] plenary review." *State* v. *Berrios*, 187 Conn. App. 661, 705–706, 203 A.3d 571, cert. denied, 331 Conn. 917, 204 A.3d 1159 (2019).

The following additional facts are necessary for our discussion. The defendant testified at trial and presented a claim of self-defense. The following is the defendant's account of the events that transpired on the night of the murder. The victim invited him to ride along for free while he picked up another fare. The victim then instructed him to move into the front seat to allow the paying fare to ride in the back. At some point, the victim stopped the car and indicated to the defendant that he wanted to "have some fun." The victim subsequently grabbed the defendant's genitalia, and the defendant reacted by punching the victim in the face. The victim then grabbed a knife and began attacking the defendant. A struggle between them ensued, and the victim threatened to kill the defendant. The defendant managed to wrestle the knife away from the victim and stabbed him repeatedly.

On May 10, 2017, the defendant's attorney filed a request to charge, requiring unanimity on whichever element of self-defense the jury might find to have been disproven.[3] The trial court held a hearing on the matter and denied the defendant's request.[4] In the course of its instructions, the court explained in detail each of the four elements of self-defense, pursuant to General Statutes § 53a-19, and in accordance with the model jury charge. See Connecticut Criminal Jury Instructions § 2.8-1, available at https://jud.ct.gov/JI/Criminal/Criminal.pdf (last visited November 1, 2019). The elements were: (1) the defendant actually believed that the victim was using or about to use physical force against him; (2) the defendant's belief was reasonable; (3) the defendant actually believed that the degree of force he used was necessary to repel the attack; and (4) the defendant's belief was reasonable. Subsequently, the court explained that "the state can defeat the defense of self-defense by disproving any one of the four elements of self-defense beyond a reasonable doubt to your unanimous satisfaction."

The defendant relies, in part, on the holdings in *United States* v. *Gipson*, 553 F.2d 453 (5th Cir. 1977), and *State* v. *Diggs*, 219 Conn. 295, 592 A.2d 949 (1991), to support his claim that a more specific unanimity instruction was required. Where alternative ways to commit an offense are alleged, *Gipson* set out a "con-

ceptual distinctiveness" criterion, specifying that a charge requiring unanimity as to the specific act found proved by the jury is required only if the alternative acts are conceptually distinct from each other. See *United States* v. *Gipson*, supra, 458.

Applying *Gipson* to this case, the defendant claims that each "element" of self-defense is analogous to a conceptually distinct basis of liability. Noting that the unanimity challenge in *Gipson* was raised as to an offense charged, as opposed to a defense, our Supreme Court, in S*tate* v. *Bailey*, 209 Conn. 322, 334–35, 551 A.2d 1206 (1988), declined to require an instruction that the jury must agree unanimously on the element it found disproved in rejecting a claim of self-defense. Our Supreme Court did, however, leave open the possibility that, under certain circumstances, such an instruction may be warranted even in the context of self-defense. Id., 336. "Despite serious reservation about the applicability of the unanimity requirement to self-defense, we do not, at this juncture, express the opinion that a specific unanimity charge would never be required for claims of self-defense, for it is clear that the requirement as refined by case law in the wake of *Gipson* does not apply to the facts of the present case." Id., 336.

Our Supreme Court was presented with the same issue in *State* v. *Diggs*, supra, 219 Conn. 302, and concluded: "As in *Bailey*, the defendant here is unable to provide us with any authority for the proposition that a unanimity instruction was required as to the factual basis for the jury's rejection of his self-defense claim, nor have we been able to locate any. A determination of that issue, however, is not necessary for the resolution of the instant case." Our Supreme Court noted that "the encounter between the victim and the defendant was a single incident, which was brief and took place within a small area. . . . We do not perceive in the record a complexity of evidence or any other factors creating jury confusion and a consequent need for a specific unanimity charge. . . . We are, therefore, not persuaded that the trial court was required to deliver such an instruction concerning the statutory exemptions to the defendant's self-defense claim." (Citations omitted.) Id., 302–303.

The defendant addresses the notion of complexity and the policy considerations arising therefrom. First, he suggests that the determining consideration is not necessarily the complexity of the case or its underlying facts, but the complexity of the instructions. He contends that analyzing the four different "elements" involved in a self-defense claim is a complex task for a jury to undertake. As such, the defendant claims that the best policy is to require a specific unanimity charge to guide the jurors and to ensure that they fully understand the state's burden, and, further, that they must be unanimous in finding which element(s) of the

defense the state has disproven. He highlights the risk that, absent the instruction, individual jurors may find different elements of the defense disproven. "Simply put, it would be intellectually dishonest, logically inconsistent, and factually incoherent to say that a jury was unanimous as to the factual basis of the offense, and the conduct committed by the defendant, if some jurors concluded that the defendant did not actually believe that he was under attack, while other jurors concluded that the defendant actually believed he was under attack but that such belief was unreasonable. Similarly, it would be no less problematic if some jurors concluded that the defendant reasonably believed he was under attack but that he either did not actually believe the degree of force he used was necessary, or that such belief was unreasonable." He notes the well established law that only the state has a burden of persuasion regarding a self-defense claim; it must disprove the defense beyond a reasonable doubt. *State* v. *Pauling*, 102 Conn. App. 556, 571, 925 A.2d 1200, cert. denied, 284 Conn. 924, 933 A.2d 727 (2007). The defendant posits a logical inconsistency in explicitly requiring unanimity on each element of a state's charged offense, but not the "elements" of a defense that the state must disprove, given that it has the same burden of persuasion.

Our Supreme Court held in *State* v. *Rivera*, 221 Conn. 58, 76, 602 A.2d 571 (1992), however, that "where, as here, the trial court did not sanction a nonunanimous verdict, a unanimity instruction on self-defense is not required." At oral argument, the defendant conceded that the trial court did not sanction a nonunanimous verdict. As *Rivera* makes clear, because the trial court in this case did not sanction such a nonunanimous verdict, "that ends the matter." Id.

In light of *Rivera*, we cannot, then, hold that a specific unanimity charge should have been given. The jury instructions, viewed in their totality, were correct in law and fairly presented the case to the jury. As in *Diggs*, the factual scenario was not especially complex; as in *State* v. *Bailey*, supra, 209 Conn. 336, the defendant's course of conduct did not comprise "separate incidents."[5] Accordingly, we conclude that the trial court properly instructed the jury with a general unanimity charge and did not err in failing to grant the defendant's request for a specific unanimity charge as to the claim of self-defense.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The state also claimed in its brief on appeal that any error in introducing the evidence was harmless. In light of our conclusion that the evidence was properly admitted, we need not discuss harmless error. See *State* v. *Scott*, 191 Conn. App. 315, 320 n.4, 214 A.3d 871, cert. denied, 333 Conn. 917, 216 A.3d 651 (2019).

[2] See footnote 1 of this opinion.

[3] The defendant requested the court to charge as follows: "The state has the burden of disproving self-defenses, as I have instructed. To meet its burden as to this disproof, the state must persuade you unanimously as to

any of the four elements on which I have instructed you. Thus, it is not enough for some of you to find the first element disproved while others find a different element disproved. Unless you unanimously agree that the state has disproven the same element, the state has failed to disprove self-defense.”

[4] The court ruled: “I am going to be delivering a general unanimity charge instructing the jury that its verdict must be unanimous. And as in *Bailey* and *Diggs*, the court had serious reservations about the applicability of the unanimity requirement to self-defense.

“I believe the general instruction as drafted is sufficient to ensure that a unanimous verdict is reached. The encounter here between the defendant and the cab driver was a single incident which took place within a small area. While there are, obviously, some conflicts in the testimony, I don’t believe that the issues this jury has to resolve with respect to what happened are so complicated that jury confusion would result if I did not give a specific unanimity charge.”

[5] *Bailey* may be read to suggest a reasonable distinction between the need for a specific unanimity instruction when separate incidents are material and the lack of need for the instruction when only one course of conduct is considered. Id.

———————————————