# STATE OF CONNECTICUT *v.* SHOTA MEKOSHVILI
## (SC 20442)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

Convicted of the crime of murder in connection with the stabbing death of
the victim, the defendant appealed. The defendant had hailed a taxicab
that the victim was driving, and, after the victim drove the defendant
to his destination, the defendant stabbed the victim repeatedly, robbed
him, and fled the scene. At trial, the defendant admitted that he had
stabbed the victim after accepting a ride from him but claimed that he
had acted in self-defense. The defendant specifically testified that the
victim had made a romantic advance toward him, a fight ensued, and,
during the struggle, the victim took out a knife and began to attack the
defendant but that the defendant wrestled the knife away and stabbed
the victim repeatedly. The state presented abundant evidence from

State *v.* Mekoshvili

which the jury reasonably could have concluded either that the defendant had fabricated various aspects of his story or that he had used more force than was necessary to defend himself against the smaller and older victim. At the conclusion of the trial, defense counsel requested that the trial court give a specific unanimity instruction that the jurors must agree unanimously as to which factor of this state's four factor self-defense test the state had disproved. The court denied counsel's request and, instead, instructed the jury on the law of self-defense largely in accordance with this state's model criminal jury instructions. The jury unanimously found the defendant guilty of murder, thereby rejecting his claim of self-defense, and the trial court rendered judgment in accordance with the jury's verdict. The Appellate Court affirmed the trial court's judgment, concluding that, pursuant to this court's prior decisions, although a jury must reject a claim of self-defense unanimously before it may find a defendant guilty, there is generally no requirement that jurors agree on which of the self-defense factors the state has disproven. On the granting of certification, the defendant appealed to this court, claiming that this court should revisit its precedent and conclude that, in order to reject a claim of self-defense, the jurors must unanimously agree as to which factor or factors of that defense the state has disproven beyond a reasonable doubt. The defendant also claimed that a specific unanimity instruction is warranted, even for a factually straightforward self-defense claim, such as his claim, in light of the complexity of the model criminal jury instruction on self-defense. *Held*:

1. This court declined the defendant's invitation to adopt a rule requiring that, even in factually straightforward cases, jurors unanimously agree as to which factor or factors of the claim of self-defense the state has disproven, and the Appellate Court correctly concluded that a specific unanimity instruction on self-defense was not constitutionally required: having reviewed this court's prior decisions concerning the issue presented, which involved factually uncomplicated scenarios and distinct theories of self-defense or distinct statutory exceptions to the defense of self-defense, this court determined that, in the ordinary case, the constitutional requirement that the jury agree unanimously that the state has established each element of the crime charged beyond a reasonable doubt did not apply to the defense of self-defense, and, accordingly, a jury need not be unanimous as to each component of a defendant's claim of self-defense; moreover, the defendant's argument that specific unanimity is constitutionally required rested on a flawed analogy between a crime and a justification for otherwise criminal conduct, such as self-defense, insofar as the defendant asserted that, just as jurors must agree that the state has proven each element of a crime beyond a reasonable doubt, the state also must persuade jurors as to which element of self-defense it has disproven, because a crime is distinct from a defense in ways that make the unanimity requirement inapplicable

State *v.* Mekoshvili

to the latter; in the present case, regardless of the specific conclusion drawn by each juror, the state persuaded every juror of the fact that the defendant did not reasonably believe that the degree of force he used was necessary to protect himself from the victim, and there was no reason why the jurors, having rejected one or more aspects of the defendant's account of the events surrounding the stabbing of the victim and having unanimously concluded, beyond a reasonable doubt, that the defendant killed the victim without adequate justification, were required to also reach a further consensus about what components of his claim of self-defense failed.

2. The defendant could not prevail on his claim that a specific unanimity instruction was warranted in his uncomplicated case on the ground that Connecticut's model criminal jury instruction on self-defense was so convoluted that jurors could not readily grasp and apply the law of self-defense: there was no reasonable possibility that the defendant's conviction resulted from the jurors' misunderstanding of the self-defense instructions, as there was more than an adequate basis in the record for the jurors to find that every aspect of the defendant's story that he had acted in self-defense was implausible; moreover, to the extent that the model instructions were unnecessarily confusing, the most reasonable solution was for the Judicial Branch's Criminal Jury Instruction Committee to clarify and simplify those instructions, rather than for this court to impose a novel constitutional requirement, especially insofar as the model instructions arguably provided the defendant with more protection than he was constitutionally entitled to.

(*One justice concurring separately*)

Argued November 15, 2021—officially released September 13, 2022

*Procedural History*

Substitute information charging the defendant with the crime of murder, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the jury before *Blawie, J.*; verdict and judgment of guilty, from which the defendant appealed; thereafter, the Appellate Court, *Lavine, Devlin* and *Beach, Js.*, affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Norman A. Pattis*, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Paul J. Ferencek*, state's

State *v.* Mekoshvili

attorney, and *James Bernardi*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. The question presented by this appeal is whether jurors, in order to reject a criminal defendant's claim of self-defense, must unanimously agree as to which component or factor of that defense the state has disproven beyond a reasonable doubt. The Appellate Court, which affirmed the murder conviction of the defendant, Shota Mekoshvili, answered that question in the negative. *State* v. *Mekoshvili*, 195 Conn. App. 154, 164, 170, 223 A.3d 834 (2020). The Appellate Court read this court's precedents in *State* v. *Bailey*, 209 Conn. 322, 551 A.2d 1206 (1988), and *State* v. *Diggs*, 219 Conn. 295, 592 A.2d 949 (1991), to mean that, although a jury must reject a self-defense claim unanimously before it may find a defendant guilty, there is generally no requirement that jurors agree on which specific factor of Connecticut's four factor test[1] for self-defense the state has disproven. See *State* v. *Mekoshvili*, supra, 167–70. We agree and, accordingly, affirm the judgment of the Appellate Court.

I

The record and the opinion of the Appellate Court set forth the relevant facts that the jury reasonably

_____

[1] For an act of violence to be justified as self-defense, (1) the defendant must actually have believed that the victim was using or was about to use physical force against him, (2) a reasonable person, viewing all the circumstances from the defendant's point of view, would have shared that belief, (3) the defendant must actually have believed that the degree of force he used was necessary for defending himself, and (4) a reasonable person, viewing all the circumstances from the defendant's point of view, also would have shared that belief. See Connecticut Criminal Jury Instructions 2.8-1, available at https://jud.ct.gov/JI/Criminal/Criminal.pdf (last visited September 7, 2022); see also General Statutes § 53a-19 (a). When the defendant uses deadly force in purported self-defense, then he must actually and reasonably believe that the victim was "using or about to use deadly physical force" or was "inflicting or about to inflict great bodily harm." General Statutes § 53a-19 (a).

State *v.* Mekoshvili

could have found. See id., 156–57, 165–66. Only a brief recitation is necessary for our purposes. In 2014, the victim, Mohammed Kamal, and his business partner operated a taxicab business. The victim typically worked the night shift. "On the evening of Tuesday, August 26, 2014, the victim left home for his shift in the taxi between 9 and 10 p.m. At approximately 12:30 a.m. on August 27, the victim briefly returned home and told his wife that he had forgotten to take the money for his share of the [$475 weekly taxi company] fee that he needed to leave in the taxi; he said he also planned to send some money to his family in Bangladesh. The victim's wife observed him take money out of an armoire, after which the victim returned to his shift. At approximately 3 a.m., the defendant hailed the victim's taxi and directed the victim to drive to Doolittle Road in Stamford. While on Doolittle Road, the defendant began to stab the victim repeatedly. At some point, the defendant opened the glove compartment, stole [more than $400] that the victim had set aside for the taxi fee and for his family in Bangladesh, took the victim's credit card, and fled the scene toward the defendant's apartment." Id., 156–57.

Following his confrontation with the victim, the defendant called his friend, Eugene Goldshteyn, and offered Goldshteyn $100 to come pick him up immediately. The defendant later told Goldshteyn that he had been injured and bloodied during an attempted burglary and that he had stabbed the homeowner repeatedly to silence him when the homeowner would not "shut up . . . ." No other local stabbings were reported that evening.

On the morning of August 27, 2014, the Stamford police found the victim's body lying on the lawn at 150 Doolittle Road in Stamford. An autopsy revealed that the victim had been stabbed 127 times. The victim's death resulted from this stabbing, which included deep

State *v.* Mekoshvili

stab wounds to his lung and jugular vein, and also numerous cuts to his face. The police also discovered the taxicab in a wooded area across the street. The victim's blood was on the interior of the taxicab. The glove compartment was ajar, and there was no money inside.

The defendant testified in his own defense at trial. He testified that, sometime around 3 a.m. that morning, he accepted a ride home from the victim. He admitted that, after the taxi came to a stop on Doolittle Road, he stabbed the victim repeatedly and then "left [the victim] behind at the crime scene covered in blood . . . ."

The defendant claimed, however, that he had acted in self-defense and without any intent to kill the victim. The Appellate Court summarized the defendant's account of the events that transpired on the night of the killing as follows. "The victim invited [the defendant] to ride along for free while he picked up another fare. The victim then instructed him to move into the front seat to allow the paying fare to ride in the back. At some point, the victim stopped the car and indicated to the defendant that he wanted to 'have some fun.' The victim subsequently grabbed the defendant's genitalia, and the defendant reacted by punching the victim in the face. The victim then grabbed a knife and began attacking the defendant. A struggle between them ensued, and the victim threatened to kill the defendant. The defendant managed to wrestle the knife away from the victim and stabbed him repeatedly." *State* v. *Mekoshvili*, supra, 195 Conn. App. 165–66. For its part, the state presented abundant evidence from which the jurors reasonably could have concluded either that the defendant had fabricated various aspects of his story or that, even if the story were true, he had used more force than was necessary to defend himself from the victim, who was substantially smaller and older than the defendant.

State *v.* Mekoshvili

The following procedural history is relevant to the
defendant's claim. The state charged the defendant with
murder in violation of General Statutes § 53a-54a (a).
At the conclusion of the trial, defense counsel filed a
request to charge that would have required that the trial
court give a specific unanimity instruction, that is, an
instruction that the jurors must agree unanimously as
to which factor of our state's four factor self-defense
test the state had disproved. The trial court held a hear-
ing on the matter and denied the defendant's request.
Instead, the court instructed the jury as to the law of
self-defense largely in accordance with our state's
model jury charge.[2] See Connecticut Criminal Jury
Instructions 2.8-1, available at https://jud.ct.gov/JI/Criminal/
Criminal.pdf (last visited September 7, 2022).

After less than three days of deliberations, the jury
unanimously found the defendant guilty of murder,

_____

[2] In relevant part, the trial court instructed the jury that "[y]ou must find
that the defendant did not act in self-defense if you find any one of the
following . . . .

"The state has proved beyond a reasonable doubt that, when the defendant
used physical force, he did not actually [believe] that [the victim] was using
or about to use physical force against him. If you have found that the force
used by the defendant was deadly physical force, then the state must prove
that the defendant did not actually believe that [the victim] (a) was using
or about to use deadly physical force against him or (b) was inflicting or
about to inflict great bodily harm upon him.

"Or the state has proven beyond a reasonable doubt that the defendant's
actual belief concerning the degree of force being, or about to be, used
against him was unreasonable, in the sense that a reasonable person, viewing
all the circumstances from the defendant's point of view, could not have
shared that belief.

"Or the state has proved beyond a reasonable doubt that, when the defen-
dant used physical force to defend himself against [the victim], the defendant
did not actually believe that the degree of force he used was necessary for
that purpose. Here, again, as with the first requirement, an actual belief is
an honest, sincere belief.

"Or the state has proven beyond a reasonable doubt that, if the defendant
did actually believe that the degree of force he used to defend himself against
[the victim] was necessary for that purpose, that belief was unreasonable,
in the sense that a reasonable person, viewing all the circumstances from
the defendant's point of view, would not have shared that belief."

State *v.* Mekoshvili

thereby rejecting his claim of self-defense. The trial court rendered judgment in accordance with the jury's verdict and imposed a total effective sentence of sixty years of incarceration. The Appellate Court affirmed the trial court's judgment, rejecting, among other claims, the defendant's argument that the trial court had committed prejudicial error and violated his constitutional rights by failing to give the requested specific unanimity instruction on self-defense. See *State* v. *Mekoshvili*, supra, 195 Conn. App. 164, 167–70. This certified appeal followed.[3]

II

The defendant invites us to depart from our precedents and adopt a rule whereby, even in a factually straightforward case such as this one, jurors would have to agree unanimously as to which factor of a self-defense claim the state has disproven. He contends that the complexity of Connecticut's self-defense jury instructions warrants such a novel rule. We decline the invitation.

A

The following well established principles frame our analysis. "An improper instruction on a defense, like an improper instruction on an element of an offense,

_____

[3] We granted certification, limited to the following issue: "Did the Appellate Court correctly conclude that the trial court had properly denied the defendant's request for a jury instruction that would require the jury to reach a verdict of not guilty unless it was unanimous in its conclusion that the state disproved *each element* of the defendant's self-defense claim beyond a reasonable doubt?" (Emphasis added.) *State* v. *Mekoshvili*, 334 Conn. 923, 223 A.3d 60 (2020). Both parties agree, and we concur, that the certified question misstates the law of self-defense. The state is not required to disprove each component of self-defense. We therefore restate the question to properly read: "Did the Appellate Court correctly conclude that the jury did not need to be unanimous in its conclusion as to which particular component or components of the defense the state had disproved." See, e.g., *Gomez* v. *Commissioner of Correction*, 336 Conn. 168, 174–75 n.3, 243 A.3d 1163 (2020) (this court may restate certified question).

State *v.* Mekoshvili

is of constitutional dimension. . . . [T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled.'' (Internal quotation marks omitted.) *State* v. *Clark*, 264 Conn. 723, 729, 826 A.2d 128 (2003). The constitutional requirements that inform those instructions are a matter of law that we review de novo. See, e.g., *State* v. *David N.J.*, 301 Conn. 122, 158, 19 A.3d 646 (2011).

Before a defendant may be found guilty of a criminal offense by a jury, the sixth and fourteenth amendments to the federal constitution require that the jury agree unanimously that the state has established each element of the charged crime beyond a reasonable doubt. See *Ramos* v. *Louisiana*, U.S. , 140 S. Ct. 1390, 1397, 206 L. Ed. 2d 583 (2020) (unanimity requirement applies to state criminal proceedings); see also *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) (state must establish each element of crime beyond reasonable doubt). However, the United States Supreme Court has never identified a constitutional requirement as to unanimity on the elements or components of a defense.[4] See, e.g., 6 W. LaFave et al., Criminal Procedure (4th Ed. 2015) § 22.1 (e), p. 26.

Although the United States Supreme Court has not spoken on the question, we do not write on a blank slate. In *State* v. *Bailey*, supra, 209 Conn. 322, and *State* v. *Diggs*, supra, 219 Conn. 295, this court considered whether those same constitutional principles require that a jury not only reject a self-defense claim unanimously, but also agree as to which specific component

[4] Although, at times, we have spoken loosely of the ''elements'' of a self-defense claim; e.g., *State* v. *Singleton*, 292 Conn. 734, 747, 974 A.2d 679 (2009); the different components of a justification defense are not, strictly speaking, essential elements. Rather, they are more properly thought of as ''special triggering circumstances . . . .'' (Internal quotation marks omitted.) Id., 749.

State *v.* Mekoshvili

or circumstance of the defense the state has disproven beyond a reasonable doubt.

In *Bailey*, the defendant claimed, inter alia, that "the trial court [had] erred in . . . failing to instruct the jury that it had to agree unanimously [on] which of the alternative ways the state had disproven the defendant's claim of self-defense . . . ." *State* v. *Bailey*, supra, 209 Conn. 328. Recognizing the "fundamental distinctions between proof of liability and disproof of self-defense"; id., 335; this court expressed "serious reservation[s] about the applicability of the unanimity requirement to [the components of] self-defense . . . ." Id., 336. This court stopped short of holding "that a specific unanimity charge would never be required for claims of self-defense," however, because it was clear that the facts of *Bailey* did not warrant such an instruction.[5] Id.

---

[5] Specifically, *Bailey* did not involve "separate incidents implicating alternative or *conceptually distinct* bases of liability"; (emphasis added; internal quotation marks omitted) *State* v. *Bailey*, supra, 209 Conn. 336; nor was it a case in which "the complexity of the evidence or other factors create[d] a genuine danger of jur[or] confusion." (Internal quotation marks omitted.) Id., 337.

We note that, at the time that *Bailey* was decided, this court recognized that a count may be impermissibly duplicitous if it charges the defendant with violating more than one provision of a criminal statute (multiple elements), but we had not yet recognized that there is a potential duplicity problem when a single count charges a defendant with multiple instances of violating a single statutory provision (multiple instances). The defendant in *Bailey* asked this court to resolve his challenge to the trial court's self-defense instructions pursuant to the then prevailing federal standard for multiple elements cases, the so-called *Gipson* test; see id., 333; see also *United States* v. *Gipson*, 553 F.2d 453 (5th Cir. 1977); under which a count is not duplicitous if it charges a defendant with violating a statute that provides that the crime may be committed in one of several itemized ways but those ways of committing the crime are not conceptually distinct. See *United States* v. *Gipson*, supra, 456–59. We recognize that the United States Supreme Court has since held that the *Gipson* test, standing alone, is too indeterminate to resolve a multiple elements challenge. See *Schad* v. *Arizona*, 501 U.S. 624, 635, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991) (plurality opinion). Although, in *Bailey*, this court, at times, used the "conceptually distinct" language drawn from *Gipson*; *State* v. *Bailey*, supra, 209 Conn. 336; we do not believe that the outcome of that case would have been any

State *v.* Mekoshvili

Several years after *Bailey*, this court again confronted the question of whether, and when, a trial court should instruct a jury that it must unanimously agree as to the basis for rejecting a claim of self-defense, but again did not definitively resolve this issue. See *State* v. *Diggs*, supra, 219 Conn. 301–302. This court reiterated its ''serious reservation[s] about the applicability of the [specific] unanimity requirement to self-defense''; (internal quotation marks omitted) id.; observing that it was unaware of any authority that supported the defendant's claim that a specific unanimity instruction was required under the type of factual scenario presented by that case. Id., 302. In rejecting the defendant's claim, this court emphasized that ''the encounter between the victim and the defendant was a single incident, which was brief and took place within a small area. [Although] the testimony bearing on the defendant's claim of self-defense varied somewhat from witness to witness, it certainly was not complicated and the trial was relatively short. [This court thus did] not perceive in the record a complexity of evidence or any other factors creating jury confusion and a consequent need for a specific unanimity charge.'' Id.

This court followed a similar path in *State* v. *Rivera*, 221 Conn. 58, 602 A.2d 571 (1992), relying on *Bailey* and *Diggs* to reject a specific unanimity instruction with respect to self-defense in a factually uncompli-

different under *Schad*, which held that jurors need not be unanimous as to a single theory of murder, so long as they all agree that first degree murder was committed, whether by premeditation or by felony murder. See *Schad* v. *Arizona*, supra, 630–45. Similarly, as we explain herein, jurors need not be unanimous as to which specific factor of a self-defense justification the state has disproven, so long as they all agree that self-defense was disproven beyond a reasonable doubt. And, in addition, this court ultimately concluded in *Bailey* that *Gipson* did not speak to the question at issue, namely, whether specific unanimity is required in the context of a self-defense justification. See *State* v. *Bailey*, supra, 334–35.

State *v.* Mekoshvili

cated case.[6] See id., 76. The Appellate Court also has
rejected the need for a specific unanimity instruction
with respect to a self-defense claim. See *State* v. *Chace*,
43 Conn. App. 205, 209 n.4, 682 A.2d 143 (1996) (applying
*Bailey* and *Diggs*). The handful of sister state courts
that have considered the question likewise have held
that no specific unanimity instruction is necessary, even
when, as in those Connecticut cases, distinct theories
of self-defense or distinct statutory exceptions to the
self-defense justification were at issue.[7]

Although we are not prepared to say that a specific
unanimity instruction could never be required for a
self-defense claim; see footnote 12 of this opinion and

---

[6] For a third time, however, this court declined to rule out the possibility
that a specific unanimity charge might be required for more factually com-
plex self-defense claims. See *State* v. *Rivera*, supra, 221 Conn. 76.

[7] See, e.g., *People* v. *Mosely*, 488 P.3d 1074, 1078 (Colo. 2021) ("[d]ue
[p]rocess [d]oes [n]ot [r]equire [j]ury [u]nanimity on the [s]pecific [r]eason
[s]elf-[d]efense [w]as [d]isproven [b]eyond a [r]easonable [d]oubt"); *Com-
monwealth* v. *Humphries*, Docket No. 15-P-1018, 2017 WL 118085, *3 (Mass.
App. January 12, 2017) (decision without published opinion, 91 Mass. App.
1101, 75 N.E.3d 1148) ("[t]here is no requirement that the jury be unanimous
as to how the absence of self-defense was proved"), review denied, 477
Mass. 1104, 88 N.E.3d 1166 (2017); *State* v. *Macchia*, Docket No. A-5473-17,
2021 WL 4515342, *11 (N.J. Super. App. Div. October 4, 2021) ("nothing in
our jurisprudence suggests that the jury's findings need be unanimous on
how the [s]tate disproves self-defense so long as the jury unanimously agrees
that the [s]tate disproved self-defense beyond a reasonable doubt"), cert.
granted, 250 N.J. 548, 274 A.3d 1218 (2022); *Rodriguez* v. *State*, 212 S.W.3d
819, 821 (Tex. App. 2006) ("To ensure that the [s]tate's burden of proof is
met, the jurors must unanimously agree that the defendant's conduct was not
justified by self-defense. It is not necessary, however, that they unanimously
agree as to why."); *Harrod* v. *State*, 203 S.W.3d 622, 625 n.2 (Tex. App. 2006)
("[w]e have found no case that has extended the law of unanimity to the
negation of at least one element of self-defense"); see also, e.g., *State* v.
*Mower*, Docket Nos. 41484-8-II, 41485-6-II, 2012 WL 3679593, *6 (Wn. App.
August 28, 2012) (decision without published opinion, 170 Wn. App. 1016)
(rejecting need for specific unanimity instruction with respect to medical
authorization defense to marijuana growing charge and observing that "[the
defendant] fail[ed] to cite any law requiring an instruction that the jury must
be unanimous on which element of an affirmative defense has been proved
or disproved"), review denied, 176 Wn. 2d 1015, 297 P.3d 707 (2013).

State *v.* Mekoshvili

accompanying text; today, we definitively answer the question that *Bailey* and subsequent cases did not have to answer directly and hold that, in the ordinary case, a criminal defendant's constitutional right to unanimity does not apply to the defense of self-defense, and thus the jury was not required to be unanimous as to each component of the defendant's claim of self-defense. The defendant's argument that specific unanimity is required rests on an analogy between a crime, such as murder, and a justification for otherwise criminal conduct, such as self-defense. He contends that, just as jurors must agree that the state has proven each essential element of the crime beyond a reasonable doubt, the state also must persuade jurors as to which of the "elements" of self-defense it has disproven. This analogy fails for at least three reasons, which boil down to the fact that a crime, to which the right of unanimity attaches, is distinct and different from a defense in ways that make the unanimity requirement inapplicable.

First, as our sister state courts have recognized, the fact that criminal conduct was not justified, such as by self-defense, is more analogous, for unanimity purposes, to a finding that a single element of a crime was committed than to the crime itself. See, e.g., *People* v. *Mosely*, 488 P.3d 1074, 1080 (Colo. 2021). All of the statutory factors of the defense of self-defense[8]—that the act be one of defense, that it stem from an objectively and subjectively reasonable belief that the defen-

_____

[8] General Statutes § 53a-19, which codifies our state's common law of self-defense; see, e.g., *State* v. *Havican*, 213 Conn. 593, 598, 569 A.2d 1089 (1990); provides in relevant part that "a person is justified in using reasonable physical force upon another person *to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose*; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." (Emphasis added.) General Statutes § 53a-19 (a).

State *v.* Mekoshvili

dant or another is at imminent risk of physical force, that it be proportionate to that risk—simply summarize what it meant under the common law for the otherwise criminal use of force against another person to be deemed "reasonable." See, e.g., *State* v. *Terwilliger*, 314 Conn. 618, 654, 104 A.3d 638 (2014); see also, e.g., *Rodriguez* v. *State*, 212 S.W.3d 819, 821–22 (Tex. App. 2006) ("[e]ach of these reasons for rejecting [the defendant's] self-defense claim results in the same conclusion: [the defendant] was not justified in using deadly force under the circumstances and [was] therefore guilty of murder"). The various statutory components of a self-defense claim thus are not independently essential elements of a self-defense justification defense that must each be disproven. See footnote 4 of this opinion. Rather, those components are more accurately understood as merely "triggering circumstances"; (internal quotation marks omitted) *State* v. *Singleton*, 292 Conn. 734, 749, 974 A.2d 679 (2009); or "factors relevant to a determination [of] whether the defendant acted in self-defense." (Internal quotation marks omitted.) *Commonwealth* v. *Humphries*, Docket No. 15-P-1018, 2017 WL 118085, *3 (Mass. App. January 12, 2017) (decision without published opinion, 91 Mass. App. 1101, 75 N.E.3d 1148), review denied, 477 Mass. 1104, 88 N.E.3d 1166 (2017).

For the same reason, just as jurors need not agree as to the specific details by which the state proves each element of a charged crime, they need not agree as to the specific factors or triggering circumstances by which it disproves a claim of self-defense. For most crimes,[9] the state must persuade every juror that the

_____

[9] As we noted; see footnote 5 of this opinion; a different analysis for specific unanimity, not directly relevant to the present discussion, applies when a statute provides that a crime may be committed in one of several itemized ways. Under those circumstances, whether jurors must specifically agree as to which of the statutory subelements is satisfied is determined by the framework established in *Schad* v. *Arizona*, 501 U.S. 624, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991), and its progeny.

State *v.* Mekoshvili

core components of the crime—the requisite mens rea, actus reus, and any required results or attendant circumstances—have been established, but there is no specific requirement that jurors unanimously agree on the underlying brute facts or even on the theory of the crime. As United States Supreme Court Justice Antonin Scalia explained in his concurring opinion in *Schad* v. *Arizona*, 501 U.S. 624, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991), "[t]hat rule is not only constitutional, it is probably indispensable in a system that requires a unanimous jury verdict to convict. When a woman's charred body has been found in a burned house, and there is ample evidence that the defendant set out to kill her, it would be absurd to set him free because six jurors believe he strangled her to death (and caused the fire accidentally in his hasty escape), while six others believe he left her unconscious and set the fire to kill her." Id., 650 (Scalia, J., concurring in part and concurring in the judgment). By the same token, once the state has successfully convinced the entire jury that the essence of a self-defense justification is lacking, that is, that the defendant's acts of violence were not a reasonable and justified use of physical force, the constitution does not require jurors to agree on why, specifically, the defendant's choice to engage in otherwise criminal conduct was not reasonable.

Some sister state courts have analogized the components of a self-defense justification to the brute facts that underlie an actus reus element of a crime. See, e.g., *Commonwealth* v. *Humphries*, supra, 2017 WL 118085, *2–3 ("[T]he five propositions [that define self-defense] are evidentiary in nature . . . . [I]t is the absence of self-defense, and not the theory thereof, that is subject to the reasonable doubt standard. . . . Requiring unanimity on the theory of self-defense would effectively require unanimity as to minute factual details within a single episode, a form of unanimity that we

State *v.* Mekoshvili

have never required.'' (Citations omitted; internal quotation marks omitted.)). Other courts suggest that the components are more akin to motives, or the legal theories by which the state proves mens rea. See, e.g., *Harrod* v. *State*, 203 S.W.3d 622, 627 (Tex. App. 2006) (''Self-defense is not a specific actus reus element of the crime, or put another way, it is not which act [the defendant] committed to kill the decedent. Rather, self-defense is 'why' [the defendant] says he committed the actus reus of the crime . . . . As such, it is more analogous to the 'manner and means' by which the specific actus reus element was committed and on which the jury is not required to unanimously agree.''). In either event, the state should not be held to a higher burden in disproving a self-defense claim than when establishing that the defendant committed the charged crime. See, e.g., *People* v. *Mosely*, supra, 488 P.3d 1081 (''[b]ecause a jury must unanimously agree only on whether, but not how, each element of a charged offense was established . . . we conclude that the jury need not unanimously agree on the means by which self-defense is disproved so long as the jury unanimously agrees that self-defense was disproven beyond a reasonable doubt'' (emphasis omitted)).

The second reason that the defendant's analogy between a crime and a justification, such as self-defense, breaks down is that, whereas the state must prove every essential element of the crime, it need only disprove a single factor or triggering circumstance to overcome a claim of self-defense. In that sense, the state's burden with respect to a justification is the very opposite of its burden with respect to proving a crime. Even if jurors disagree as to the specific reason why the crime was not a justified act of self-defense, ''the jury's guilty verdict established that [the jurors] all agreed that the prosecution disproved self-defense, and that is all due process requires.'' Id.

State *v.* Mekoshvili

Indeed, because the lack of any one triggering circumstance causes a self-defense claim to fail, imposing a specific unanimity requirement as to self-defense would lead to absurd results. The same twelve jurors, applying essentially the same law to the same factual findings, could find the defendant not guilty in one jurisdiction but reject his self-defense claim in a different jurisdiction based solely on the arbitrary manner in which those different jurisdictions group and combine the various components or triggering circumstances that define self-defense. Surely, due process does not compel such an outcome.

The third key distinction between a crime and a justification defense that militates against the defendant's analogy is that, as a practical matter, the state has far less control over how the latter is presented to the jury. Whereas the state, in bringing a prosecution, must tell the "story" of the crime; *Old Chief* v. *United States*, 519 U.S. 172, 186–89, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997); it is typically "the defendant [who] controls the shape and direction of a self-defense claim. The state must apply its proof to factual circumstances raised or illuminated by the defendant." *State* v. *Bailey*, supra, 209 Conn. 335. The state typically has little or no control over how detailed, how plausible, or how multifaceted a theory of self-defense will be in any particular case. For this reason, as we explained in *Bailey*, it would be particularly unreasonable to require more specific juror unanimity with respect to disproof of self-defense than with respect to proof of liability. "In occupying this inferior tactical position, the state would face a Herculean task if it were required to present for the jury's unanimous agreement a definitive set of facts, neatly synthesized in a unified theory, designed to explain why the defendant's conduct was not justified. . . . [T]he defendant's argument [that the state must disprove one specific factor to the jury's unanimous satisfaction]

State *v.* Mekoshvili

. . . would lead to a practical incongruity in the state's role of disproving self-defense.'' Id., 335–36.

This court also emphasized in *Bailey* that a genuine instance of self-defense often will involve ''a whirlwind of physical and emotional turbulence . . . that realistically could not be atomized into discrete, distinct events.''[10] Id., 337. Particularly in a case such as this, in which the defendant's testimony provided the only eyewitness account of the events in question, the outcome hinges largely on the jury's resolution of highly subjective and speculative questions. The jury had to make determinations regarding the accuracy and credibility of the defendant's account, what exactly transpired on the night in question, what the defendant might have been thinking and feeling during each moment of the incident, and how a reasonable person would have reacted to the perceived events.

It is quite possible that all twelve jurors in the present case concluded that the defendant's testimony lacked credibility in numerous respects. Some jurors may have concluded that the defendant did not truly believe that the victim's actions warranted a lethal response. Some jurors may have concluded that the defendant's tale was an utter fabrication, concocted to conceal a premeditated robbery and murder. Still others may have concluded that he overreacted to a nonthreatening, romantic advance and then chose to terminate the ensuing struggle with excessive, deadly force. Many (or all) jurors may have reached more than one such conclu-

[10] The same thing could, of course, be said of many violent crimes that are not justified by self-defense. But the jury in such cases merely needs to agree that the defendant committed a crime such as assault or murder against a particular victim while motivated by a sufficiently voluntary mental state. In the context of self-defense, then, it makes little sense to require juror agreement on specific factual questions regarding the defendant's beliefs and internal mental process, such as whether he believed that the victim posed no risk or, rather, that the victim posed a risk but the defendant believed that the risk was insufficient to justify the degree of force used.

State *v.* Mekoshvili

sion. In any case, the defendant's justification for the killing is lacking; the state has persuaded every juror of the one thing that is necessary to overcome a self-defense justification, namely, that the defendant did not actually hold a reasonable belief that the degree of force he used was necessary to protect himself from the victim. We see no reason why the jurors, having rejected one or more aspects of the defendant's account and having unanimously concluded, beyond a reasonable doubt, that he killed the victim without adequate justification, must also reach a further consensus on what components of the defense failed.

The unanimity requirement fosters thorough deliberations by forcing the entire jury to consider dissenting viewpoints before concluding that the state has established each essential element of a charged crime beyond a reasonable doubt. See, e.g., *United States* v. *Lopez*, 581 F.2d 1338, 1341 (9th Cir. 1978). The same holds true with respect to the question of whether the defendant's conduct was justified. We fail to see, however, how the purposes behind the unanimity requirement would be served by requiring a properly charged jury—one instructed that it had to be unanimous in its rejection of self-defense—to engage in further deliberations to reach unanimous consensus as to the specific brute facts and legal theories underlying the conclusion that the defendant's use of force was unjustified under the circumstances. To require jurors to agree on such details would result in "hung juries in cases in which the jurors actually agree [on] the defendant's guilt . . . ." (Internal quotation marks omitted.) J. Fayette, " 'If You Knew Him Like I Did, You'd Have Shot Him, Too . . .' A Survey of Alaska's Law of Self-Defense," 23 Alaska L. Rev. 171, 176 n.22 (2006).

We thus agree with the Appellate Court that a specific unanimity instruction was not required.[11] Although *Bai-*

_____

[11] Because we conclude that a specific unanimity charge was unnecessary, we need not consider the state's argument that, in any event, the defendant's

State *v.* Mekoshvili

*ley*, *Diggs*, and *Rivera* left open the possibility that
a specific unanimity instruction might be required in
exceptional cases involving multiple victims, multiple
acts of self-defense, or other unusually complex factual
scenarios, this is not such a case.[12]

B

The defendant contends, alternatively, that even fac-
tually straightforward self-defense claims, such as his,
warrant a specific unanimity instruction because, although
the case itself may not be complicated, Connecticut's
model jury instructions are so convoluted that jurors
cannot readily grasp and apply the law of self-defense.
Although the state concedes that the model instructions
are unnecessarily complex, it takes the position that add-
ing a specific unanimity instruction would merely add
to the complexity and compound juror confusion.

We do not think that there is any reasonable possibil-
ity that the defendant's conviction resulted from the

claim fails because the trial court did not sanction a nonunanimous verdict.
See, e.g., *State* v. *Rivera*, supra, 221 Conn. 76 (because "the trial court did
not sanction a nonunanimous verdict, a unanimity instruction on self-defense
is not required").

[12] Although one sister state court has likewise left open the possibility
that a specific unanimity self-defense instruction might be required in cases
involving multiple victims or other complexities; see, e.g., *State* v. *Martinez*,
Docket No. A-0655-09T4, 2013 WL 5989278, *15 (N.J. Super. App. Div. Novem-
ber 13, 2013), cert. denied, 217 N.J. 590, 91 A.3d 25 (2014); we are not aware
of any case, and the parties have not cited any, in which such an instruction
has been deemed necessary. We note as well that, in each of the cases
that left open the possibility that a specific unanimity instruction might be
necessary in complex self-defense scenarios, the court cited to cases in
which a specific unanimity instruction on the *elements of a crime*, rather
than a defense, was at issue. See, e.g., *State* v. *Bailey*, supra, 209 Conn. 337,
338, citing *United States* v. *Schiff*, 801 F.2d 108, 114–15 (2d Cir. 1986), cert.
denied, 480 U.S. 945, 107 S. Ct. 1603, 94 L. Ed. 2d 789 (1987). As we explained
in part II A of this opinion, however, fundamentally different principles
apply to the elements of a crime than to the components of a justification,
such as self-defense. Having now considered the question from this stand-
point, although we still do not categorically preclude the possibility, we are
hard-pressed to imagine any scenario in which juror unanimity as to the
particular factors of a self-defense claim would be required.

State *v.* Mekoshvili

jurors' misunderstanding of the self-defense instructions, which the trial court reiterated several times and in various ways. Indeed, there was more than an adequate basis in the record for the jurors to find that *every* aspect of the defendant's self-defense story was implausible. If the model jury instructions are unnecessarily confusing, then the most reasonable solution is to clarify and simplify those instructions, rather than to impose a novel constitutional requirement. We invite the Criminal Jury Instruction Committee of the Judicial Branch to adopt a more streamlined test for self-defense, consistent with the approach that many of our sister states and the federal courts have taken.[13]

The state also emphasizes that, as currently written, the model instructions actually provided the defendant with more protection than he was entitled to. Although we repeatedly have indicated that, at least in cases that are neither factually nor legally complex, there is no requirement that jurors agree as to the specific basis for rejecting a claim of self-defense, the model instructions nevertheless could be read to require specific unanimity. They provide in relevant part: "To meet [its] burden, the state need not disprove all four of the elements of . . . self-defense . . . . Instead, it can defeat the defense . . . by disproving *any one of the four elements* of self-defense beyond a reasonable doubt *to your unanimous satisfaction. . . . If you unanimously find that the state has disproved beyond a reasonable doubt at least one of the elements of the defense* . . . you must reject that defense and find the defendant guilty." (Emphasis added.) Connecticut Criminal Jury Instructions, supra, 2.8-1. The highlighted language could be read to suggest that jurors must agree

[13] See, e.g., United States Court of Appeals for the Fifth Circuit, Pattern Jury Instructions (Criminal Cases) 1.39 (2019) p. 59, available at https://www.lb5.uscourts.gov/juryinstructions/fifth/crim2019.pdf (last visited September 7, 2022).

State *v.* Mekoshvili

that the state has disproved one particular element or component[14] of the defense beyond a reasonable doubt.[15] This is not constitutionally required. Accordingly, the Criminal Jury Instruction Committee also may wish to consider whether the instruction can be framed to more accurately characterize the state's burden of proof and the requirement that jurors agree only as to the ultimate conclusion that the state has disproved the defense of self-defense.

The judgment of the Appellate Court is affirmed.

In this opinion ROBINSON, C. J., and McDONALD, D'AURIA, KAHN and KELLER, Js., concurred.

ECKER, J., concurring in the judgment. I concur in the judgment because I agree that the defendant, Shota Mekoshvili, was not entitled to a specific unanimity instruction materially different from the one used to instruct the jury in the present case. The instruction on self-defense, which spans fifteen pages of trial transcript, repeatedly reminds the jury that its findings must be unanimous, and includes the following directive: "You must remember that the defendant has no burden of proof whatsoever with respect to the defense of self-defense. Instead, it is the state that must prove beyond a reasonable doubt that the defendant did not act in self-defense if it is to prevail on the charge of murder or as to any of the lesser included offenses on which you will be instructed. *To meet this burden, the state need not disprove all four of the elements of self-defense. Instead, the state can defeat the defense of self-defense by disproving any one of the four elements*

---

[14] See footnote 4 of this opinion.

[15] Indeed, the state contends that, because the trial court gave the jury this instruction, the defendant did, in effect, receive the specific unanimity instruction that he requested.

State *v.* Mekoshvili

*of self-defense beyond a reasonable doubt to your unanimous satisfaction.*''[1] (Emphasis added.)

The phrasing of the italicized sentence is not perfect, because it could be construed to mean that the law requires only unanimous agreement that the state has disproved any one (but not necessarily the same one) element of the defense. In my view, however, the far more natural reading of the language is that, although the state need not disprove all four elements of the defense, the defense is not defeated unless the jury unanimously agrees that the state has disproved at least one of the four elements (any one of them, but the same one) beyond a reasonable doubt. This latter understanding provides the defendant with the substance of the specific unanimity charge he requested. See, e.g., *State* v. *Ledbetter*, 263 Conn. 1, 22, 818 A.2d 1 (2003) (''[The] refusal to charge in the exact words of a request . . . will not constitute error if the requested charge is given in substance. . . . Thus, when the substance of the requested instructions is fairly and substantially included in the trial court's jury charge, the trial court may properly refuse to give such instructions.'' (Internal quotation marks omitted.)).

Because the jury charge fairly and substantially informed the jury that it must unanimously agree that the state had disproved the same element of self-defense in conformance with the specific unanimity

[1] The requirement of jury unanimity was a consistent theme throughout the entire jury charge, and the jury was told by the trial court more than twenty times that it must reach a unanimous verdict with respect to the crimes charged and the defense of self-defense. In addition to the passage quoted in the text of this opinion, the trial court concluded its self-defense charge by again reminding the jury that it must reject the defense of self-defense ''[i]f you unanimously find that the state has disproved beyond a reasonable doubt at least one of the elements of the defense . . . . If, on the other hand, you unanimously find that the state has not disproved beyond a reasonable doubt at least one of the elements of the defense . . . then . . . you must find the defendant not guilty . . . .''

State *v.* Mekoshvili

instruction requested by the defendant,[2] I see no need to address whether such a unanimity instruction constitutionally was required. I therefore express no opinion on the constitutional analysis set forth in the majority opinion.

I respectfully concur in the judgment for these reasons.

—————————

[2] The defendant requested the following specific unanimity instruction: "The state has the burden of disproving self-defenses, as I have instructed. To meet its burden as to this disproof, the state must persuade you unanimously as to any of the four elements on which I have instructed you. Thus, it is not enough for some of you to find the first element disproved while others find a different element disproved. Unless you unanimously agree that the state has disproven the same element, the state has failed to disprove self-defense." (Internal quotation marks omitted.) *State* v. *Mekoshvili*, 195 Conn. App. 154, 166 n.3, 223 A.3d 834 (2020).